# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DELPHIA K. ELLIOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-93-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Delphia K. Elliott requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Court finds that the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on January 20, 1961, and was forty-eight years old at the time of the administrative hearing. She earned her GED and has past relevant work as a cashier/checker, home attendant, and fast food worker (Tr. 18, 41). The claimant alleges that she has been unable to work since January 1, 2002, because of an ankle injury, nerve damage in her left leg, tendonitis in her right arm and shoulder, and arthritis (Tr. 140).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on July 10, 2007. The Commissioner denied her applications. ALJ Osly F. Deramus held an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 2, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a); 416.967(a) with the additional physical limitations that she can only occasionally stoop, crouch, crawl, kneel, balance, grasp, and reach

overhead (Tr. 14). Further, the ALJ found that the claimant has some limitations in the ability to understand, remember, and carry out detailed tasks and sustain concentration and persistence over extended periods of time due to mental limitations (Tr. 14). While the ALJ concluded that the claimant was unable to return to her past relevant work, he found that there was work the claimant could perform in the national economy, *i. e.*, charge account clerk and call out operator (Tr. 19). Thus, the ALJ concluded that the claimant was not disabled (Tr. 19).

**Review**

The claimant contends that the ALJ erred: (i) by ignoring probative evidence that conflicted with his findings; (ii) by failing to include all of claimant's impairments in the hypothetical posed to the vocational expert; and (iii) by failing to reconcile the inconsistencies between the testimony of the vocational expert and the DOT. The Court agrees with the claimant's first contention.

The claimant presented at OU Medical Center in October 2004 complaining of "[l]ow back pain, numbness to the left lower extremity and pain in her left lower extremity when she has a bowel movement" (Tr. 199). During that visit, claimant related that her problems in this regard had begun one month earlier, and she was diagnosed with sciatica as a result (Tr. 199). An MRI performed in October 2004 revealed that claimant had a "[l]eft paracentral disc extrusion at L5-S1 level with disc fragment migrated slightly cephalad encroaching the left L5-S1 foramen and exiting nerve root" (Tr. 203). The discharge diagnosis at that time was sciatica and neuropraxia (Tr. 200). The

claimant was noted at that time to be uninsured and without a primary care physician (Tr. 198). One month later, the claimant presented with sciatic nerve pain on her left side (Tr. 209). The claimant again sought treatment at the OU Medical Center emergency room complaining of right-sided back pain radiating down her right leg on February 20, 2005 (Tr. 196). The claimant stated that she was "going to be scheduled for surgery, but has not followed up in the clinic" and that she was experiencing a lot of pain (Tr. 196). The diagnoses at that time was back pain and right-sided sciatica (Tr. 197). In May 2005, the claimant again presented at OUMC for treatment complaining of back and left ankle pain (Tr. 205).

The claimant received most of her treatment through Central Oklahoma Family Medical Center (COFMC). Her records there date back to November 2000, at which time claimant was noted to be suffering from depression and anxiety (Tr. 245). There are multiple notations of depression throughout claimant's medical records at COFMC (Tr. 231, 232, 234, 237, 241, 243, 244).

The claimant was admitted for inpatient treatment at Carl Albert Community Mental Health Center on May 14, 2007 (Tr. 259). Treatment notes reflect that claimant presented with suicidal ideation, poor sleep, subjective depression, mood swings, racing thoughts, and difficulty with anger (Tr. 260). At the time of her admission, the claimant had recently been involved in an altercation with her girlfriend and was homeless (Tr. 260). Upon discharge, she was diagnosed with mood disorder and assigned a GAF of 40 (Tr. 261).

State examining physician Dr. Kathie Ward, Ph.D. evaluated and conducted a mental status examination of claimant on October 31, 2007 (Tr. 268-70). Claimant related that though she was hospitalized overnight for psychiatric reasons, she failed to follow up on treatment but acknowledged that "'she should have'" (Tr. 268). She was noted to have a tearful demeanor "around issues of grief" but brightening upon discussing other topics (Tr. 269). The diagnosis was depression, NOS, and Dr. Ward wrote that claimant presented with "unresolved grief and some depression that was helped with Paxil per her report" (Tr. 270).

State reviewing physician Dr. Carolyn Goodrich, Ph.D. completed a Psychiatric Review Technique on December 17, 2007, and found that claimant's symptoms fell under the umbrellas of affective disorders and substance addiction disorders and consisted of disturbance of mood, accompanied by a full or partial manic or depressive syndrome, as evidenced by decreased energy, difficulty concentrating or thinking, and thoughts of suicide (Tr. 32). Dr. Goodrich, however, opined that claimant's mental health impairments only presented a mild degree of limitation in the functional categories of activities of daily living, maintain social functioning, and maintaining concentration, persistence, or pace (Tr. 34).

The claimant was admitted for inpatient treatment again in May 2009 (Tr. 364). At that time, treatment notes of Dr. Charles Van Tuyl, M.D. indicate that she was under the influence of "ice" and using methamphetamine twice a week (Tr. 364). The claimant stated that she had been suffering from depression for six years, and she was noted to

weep throughout the intake interview (Tr. 364). The claimant also stated that "she smokes as many joints as she can get a hold of" (Tr. 365). She was noted to be paranoid, as she stated that she "thinks people are plotting against her and nobody wants her around" (Tr. 366). The claimant also reported unresolved grief from the death of three family members that happened in short succession (Tr. 364). The initial diagnoses was major depression, recurrent, severe, with psychotic features, cannabis abuse, and amphetamine abuse, and her GAF was assessed to be 33 (Tr. 366).

The ALJ's analysis of the claimant's mental RFC is not supported by substantial evidence, because the ALJ ignored the probative evidence of claimant's GAF scores during her encounters with mental health providers at Carl Albert Medical Center. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ failed to follow this directive, choosing instead to rely only upon the evidence that supported a finding of non-disability. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

In this case, the ALJ completely ignored objective medical evidence on the severity of claimant's depression, *i. e.*, the two assessments performed at Carl Albert Mental Health Center which found that claimant had GAF scores of 33 and 40, respectively. The Commissioner argues that GAF scores do not necessarily have an impact on claimant's ability to keep a job. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Further, even if Commissioner's argument that GAF scores are not necessarily indicative of ability to hold a job may be true, *see Givens*, 251 Fed. Appx. at 567 n.4 (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion], the ALJ still should have discussed the probative evidence suggestive of claimant's severe mental health impairment and if or how it impacted her ability to maintain employment. *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the Court cannot determine whether he actually considered it, and this Court is in no position to draw factual conclusions on the ALJ's behalf. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga*, 482 F.3d at 1207-08 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Accordingly, the ALJ failed to properly analyze the medical evidence of record as outlined above, and the Court concludes that the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis of the medical evidence of record.

## Conclusion

The Court finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge finds that the decision of the ALJ is REVERSED and REMANDED.

**DATED** this 26th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma